**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) |
| | ) **DOCKET NO. 14-CR-10060-RWZ** |
| | ) |
| **RYAN HATHAWAY** | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

If a suicide attempt is a cry for help, then Mr. Hathaway has been screaming for help for a long time. Since his own mother committed suicide when he was only 18, Mr. Hathaway has repeatedly tried to take his own life, engaged in self-mutilation, and other self-injurious behavior such as injecting heroin. He stands to be sentenced by this court for his violation of SORNA laws when he left a homeless shelter in Boston, into which his parole officer had placed him, so that he could go to Rhode Island to stay with family instead. He has already served six months for the parole violation based on the same conduct, and a warrant is outstanding for similar charges based on the same conduct in Rhode Island state court. None of society's "safety nets" have caught Mr. Hathaway, despite his myriad of problems. The only net that has ensnared him is the criminal justice system, which up to this point has been of absolutely no help to him. This is so despite a childhood full of abuse, a mother addicted to drugs who introduced her son to drugs at only 11, and his depression, poverty and homelessness. What Mr. Hathaway needs now from this Court is a sentence that will finally provide him with the support and services he needs to live a law-abiding and happy life. He urges the court to impose a sentence of 18 months' incarceration followed by five years' supervised release. This sentence is "sufficient, but not greater than necessary" for Mr. Hathaway. 18 U.S.C. § 3553(a).

## I.     THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Hathaway stands to be sentenced for failing to update his sex offender registration when he moved from Rhode Island to Massachusetts.  There is no other relevant, criminal conduct before the court.  The crime hurt no one.  His failure to register was a violation of a rule.  He did not fail to register in order to conceal criminal conduct, or in order to commit any sex offenses.  He fled from Massachusetts, where he was relegated to a homeless shelter due to his status on lifetime community parole, and went to Rhode Island, where he could live with friends and family.  When at the police station, he ripped the zipper off his pants and used it to slash his arm in an attempt to take his life.

## II.    THE HISTORY AND CHARACTERISTICS OF RYAN HATHWAY

Mr. Hathaway's childhood was tumultuous, unstable, and, quite plainly, tragic.  One counselor described his childhood as "catastrophic."  See PSR at ¶78.  His mother was addicted to crack cocaine and suffered from depression.  His father was an abusive alcoholic.  His father was incarcerated, and essentially left his life, when Mr. Hathaway was only three years old.  Mr. Hathaway and his sister were raised by their mother, who struggled to provide financial support.  The family moved around a lot.  They relied on food stamps.  And all the while Mr. Hathaway's mother abused crack cocaine, with drug dealers coming in and out of the house.  Mr. Hathaway first tried crack cocaine at only 11 years old with his mother.  He started working for her drug dealers at the same age.

When Mr. Hathaway was 18, his mother, whom he considered his best friend, committed suicide.  Her death devastated Mr. Hathaway.  At an age when some teenagers are deciding which college they will attend, Mr. Hathaway was homeless, without a job or education, drug addicted, and suicidal.  Before his mother's suicide, Mr. Hathaway had only been arrested once.

His criminal behavior and drug and alcohol use both increased dramatically after his mother's death.   So did his attempts to take his own life.

Mr. Hathaway's adult life has been marked by brief but frequent periods of incarceration. Yet the only sex offense on his record is the conviction for indecent assault and battery that occurred over ten years ago, and involved no allegation of force.   Other convictions include offenses such as disorderly conduct, after the police were called after someone reported that Mr. Hathaway was suicidal.   See PSR at ¶30.   Many of his convictions are for theft offenses, which Mr. Hathaway was motivated to commit due to his poverty, homeless, and addiction to drugs. See PSR at ¶¶29, 32, 33, 34, 38, 39, 41, 42.   One such offense, for which he received 3 criminal history points, involved the shoplifting of $167 worth of baby formula.   See PSR ¶35.   Some involved stealing from family members.   See PSR ¶37.   In addition, all of Mr. Hathaway's convictions were the result of guilty pleas, and many of the sentences were imposed to run concurrent with each other.   See, e.g., PSR ¶¶33-38 (all sentences ran concurrent with each other), PSR ¶¶39-40 (same); PSR ¶¶41-43 (same).   All of his prior convictions originated in the state district courts.

It was as a result of his prior failure to register conviction in state court that Mr. Hathaway was sentenced to lifetime community parole.   It was not because he committed another sex offense.   Yet, with the sentence of lifetime community parole came a laundry list of arduous conditions, including the following: he could not leave the state of Massachusetts for up to one year, even though all his ties are in Rhode Island; he had to wear a GPS monitoring device[1]; he

---

1 In a case in which the Massachusetts Supreme Judicial Court determined that the imposition of a GPS monitoring device was in fact punitive, the Court wrote: "As 'continuing, intrusive, and humiliating' as a yearly registration requirement might be, a requirement permanently to attach a GPS device seems dramatically more intrusive and burdensome.   There is no context other than punishment in which the State physically attaches an item to a person…While GPS monitoring does not rise to the same level of intrusive regulation that having a personal guard constantly and physically present would impose, it is certainly far greater than that associated with traditional monitoring.   And the impact of such intrusion is of course heightened by the physical attachment of the GPS bracelet,

could not associate with known felons; he had to abstain from alcohol and drugs; he could not be around children without supervision; he had to attend sex offender treatment; he could not use the internet; he could not possess a cell phone with a camera; and he had to submit to random polygraph testing.  Any violation of these parole conditions meant jail, with the length of sentences staircased for subsequent violations.  For Mr. Hathaway, homeless, drug addicted, and without family support, these conditions were, as he puts it, "too much."

Like Mr. Hathaway, his sister Heather is also addicted to drugs and suffers from depression.  He has very little contact with his father.  As a result, he has virtually no support from his family, and those family members with whom he does maintain a relationship are not necessarily positive influences in his life.  But, fortunately for Mr. Hathaway, the Supreme Judicial Court recently held that lifetime community parole is unconstitutional, *see Commonwealth v. Casey L. Cole*, No. SJC-11316 (June 11, 2014), so at least some of the feeling of hopelessness about his future and ability to succeed is alleviated.

Mr. Hathaway's "history and characteristics" are a significant mitigating factor in fashioning an appropriate sentence.  Childhood abuse and neglect can cause chemical changes in the brain and nervous system. Studies involving abused and neglected children show that "abused individuals were 1.8 times more likely to be arrested for a juvenile offense, 1.5 times more likely to be arrested as an adult, and 1.35 times for likely to be arrested for a violent crime." Debra Niehoff, *Ties that Bind: Family Relationships, Biology, and the Law*, 56 DePaul L. Rev. 847 (2007). Studies also show that abuse can be in the form of neglect only and "need not involve actual physical injury to do lasting damage to the developing brain." *Id.* at 849.   It is for this reason that the Court has noted criticism of the guidelines' policy of ignoring "[e]conomic hardship, drug

---

which serves as a continual reminder of the State's oversight."  *Commonwealth v. Cory*, 454 Mass. 559, 570-571 (Mass. 2009).   Mr. Hathaway was required to bear the burden of wearing this type of device for the rest of his life.

addiction, a history of physical or sexual abuse, or a lack of guidance as a youth," factors which bear on important moral questions of culpability.  *United States v. Ennis*, 468 F.Supp.2d 228, 230, n.2 (2006) (citing Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using The Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. Law Rev. 19, 70-72 (2003)).   Even a justice of the Supreme Court finds the mitigating value of childhood abuse obvious: "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting).

Mr. Hathaway's punishment for this offense must be less severe than it would be for someone with a home, a job, without drug addiction or mental illness, and family support, yet despite that committed crimes, or someone who has not experienced the childhood trauma and neglect that he did.   In other words, he cannot be found to be as blameworthy when he was never given the chance to succeed in life in the first place.

### III.     THE SENTENCING GUIDELINES

In this case, the Sentencing Guidelines recommend a sentence between 30 and 37 months. Those guidelines are driven more by Mr. Hathaway's criminal history than by the offense at issue here.[2]

A departure is warranted under U.S.S.G. §5G1.3(c) and §5K2.23 to adjust for the six months Mr. Hathaway already served as punishment for the same conduct.   Mr. Hathaway was arrested on December 7, 2013, but was incarcerated in state system for the same conduct.   He was

---

2 For example, if Mr. Hathaway were in criminal history category I, which undoubtedly very few charged with this offense are because it necessarily requires at least one prior conviction for a sex offense, the Guideline Sentencing range would be one-third (10-16 months) of what he faces now.

not transferred to federal custody until May 13, 2014.  See PSR at ¶1, 3.  In addition, the state of Rhode Island has brought identical charges in Rhode Island District Court, which Mr. Hathaway has yet to face.  See PSR at ¶50.  That case could result in further incarceration and also prevent Mr. Hathaway from moving immediately to a halfway house.

§5G1.3(c) states that a sentence may be imposed to run concurrently to a prior undischarged term of imprisonment to achieve just punishment for the instant offense.  §5K2.23 applies when the defendant has already completed serving the term of imprisonment, as in this case.  Mr. Hathaway should not be subject to consecutive punishments for the same conduct.  Instead, the sentence imposed in this case should be adjusted by the six months he has already served.  Such a result is not only warranted under these sentencing guidelines provisions, but also justifies a variance so as to provide just punishment for the offense as stated in 18 USC §3553(a)(2)(A).

IV.    AN APPROPRIATE SENTENCE

Pursuant to 18 U.S.C. §3553(a)(2), the court must consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  An 18 month sentence, followed by five years' supervised release, will achieve those four purposes of sentencing.

Eighteen months of incarceration is just punishment for the offense before the court, which is a victimless crime.  The fact that Mr. Hathaway was prosecuted in federal court for this failure to register, in addition to being prosecuted in state court for the exact same conduct, is deterrent

enough.   The lengthy period he will be on supervised release will also help deter Mr. Hathaway from recidivating.   The public will best be protected from Mr. Hathaway if he gets support services and treatment.   While the Bureau of Prisons has opportunities for treatment in which Mr. Hathaway can participate, his sentence will likely be too short to participate in the most intensive treatment programs, such as the 500 hour residential drug program (RDAP).   Instead, Mr. Hathaway's opportunity for rehabilitation will be on supervised release.   His term of supervised release will be significantly longer than his term of incarceration.   While Mr. Hathaway has a lengthy criminal history, the state system which has processed him in the past has been no help to him.   Mr. Hathaway will do well with the support, resources, and experience of the federal probation department.[3]   A federal probation officer could assist him in finding treatment programs, health insurance, housing, and job training.

Moreover, for those with substance abuse problems, treatment is the most effective way to reduce recidivism.   As Justice Gertner of this Court in *United States v. Perella*, 273 F. Supp. 2d 162,164 (2003) commented:

> ... the relationship between drug rehabilitation and crime is clear. If drug addiction creates propensity to commit crime, drug rehabilitation goes a long way to preventing recidivism. In fact, statistics suggest that the rate of recidivism is less for drug offenders who receive treatment while in prison or jail, and still less for those treated outside of a prison setting.   Citing Lisa Rosenblum, Treatment for Drug Offenders, Hastings L.J. 1217, 1220 (2002).

"Effective" sentences for drug addicts are those that provide treatment.   "Dollar for dollar,

---

3 Statistics show that supervised release greatly reduces recidivism.   See Laura Baber, Results-based Framework for Post-conviction Supervision Recidivism Analysis, 74 Fed. Prob. 3, Fig. 4, Dec. 2010, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/FederalCourts/PPS/Fedprob/2010-12/index.html (finding that after three years of supervision, only 22.6% of probationers had been rearrested).   Even after completion of supervised release, recidivism rates remain impressively low.   Id. at Fig. 7 (showing that three years after completion of supervised release, only 17.7% of probationers had been arrested).   In contrast, 39% of Massachusetts state offenders are re-convicted within 3 years of release from prison when they have no post-release supervision.   The Sentencing Project, "State Recidivism Studies," June 2010, http://sentencingproject.org/doc/publications/inc_StateRecidivismFinalPaginated.pdf.

treatment reduces the societal costs of substance abuse more effectively than incarceration does." Doug McVay, Vincent Schiraldi, & Jason Ziedenberg, *Treatment or Incarceration: National and State Findings on the Efficacy of Cost Savings of Drug Treatment Versus Imprisonment* (March 2004), 6, Justice Policy Institute Policy Report, available at http://www.justicepolicy.org/article.php?list=type&type=98.   "Treatment offers the best alternative for interrupting the drug abuse/criminal justice cycle for offenders with drug abuse problems."   National Institute on Drug Abuse, *Principles of Drug Abuse Treatment for Criminal Justice Populations*, National Institute of Health (2006), available at http://www.nida.nih.gov/PDF/PODAT_CJ/PODAT_CJ.pdf.   Because in Mr. Hathaway's case there is a direct correlation between his drug use and criminal activity, his sentence must be geared towards his rehabilitation in order to fulfill the goals of sentencing set forth in 18 USC § 3553(a).

Mr. Hathaway does object, however, to many of the "proposed special conditions" in the PSR that seem to relate to his one sex offense from over ten years ago.   Specifically, Mr. Hathaway objects to proposed special conditions number 9 (requiring sex offender treatment), 10 (prohibiting contact with children), and 11 (prohibiting employment and volunteer activities that involve contact with children).

Recently, Judge Posner of the Seventh Circuit wrote extensively on the often-overlooked part of sentencing involving the imposition of conditions of supervised release.   *United States v. Siegal*, 2014 U.S. App. LEXIS 9889, No. 13-1633, -1640 (7th Cir. May 29, 2014).   The opinion serves as a reminder that even conditions of supervised release – in fact, each and every condition of supervised release – must be carefully considered under the 3553(a) factors before being imposed.   *Id.*   (remanding for reconsideration of conditions of supervised release where defendant convicted of sexual abuse of a minor and creation of child pornography was ordered to

refrain from possessing any material containing nudity, to not possess or take mood-altering substances, and to participate in sex offender treatment, among others).

Under 18 U.S.C. §3583(d), the court may order special conditions of supervised release, to the extent that such conditions:

> (1) are reasonably related to (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) are designed to afford adequate deterrence to criminal conduct, (c) protect the public from future crimes of the defendant, and (d) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;
> (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
> (3) are consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).  *See also* U.S.S.C. §5D1.3(b).

The crime of conviction need not be a sex offense for a judge to impose special conditions of probation relating to sex offender treatment or similar conditions. *United States v. York*, 357 F.3d 14 (1st Cir. 2004) (defendant convicted of threats by mail required to undergo sex offender treatment as a condition of supervised release because he had two prior convictions for sexual assault on minors); *United States v. Sebastian*, 612 F.3d 47, 50 (1st Cir. 2010) (finding no plain error where defendant, who did not object at the time of sentencing, was required to under sex offender treatment as a condition of his supervised release based on a prior conviction for sexual assault even though crime of conviction was for drugs).

However, courts have paid special attention to the amount of time that has elapsed between the defendant's prior sex offense and the offense of conviction when deciding whether sex offender specific conditions are appropriate. In *York*, where the court upheld required sex offender treatment, the defendant had two prior sex offenses, each occurring less than ten years

before his offense of conviction, in which he made threats to a relative of one of his prior minor victims. 357 F.3d at 17-18; s*ee also Sebastian*, 612 F.3d 47 (defendant convicted of drug offense required to undergo sex offender treatment and prohibited from possessing pornography because of sexual assault conviction less than ten years previously).

The proposed special conditions in Mr. Hathaway's case do not bear any relationship to the nature and circumstances of the offense before the court.   Although his offense is failure to register as a sex offender, he has not committed another sex crime.   The one sex offense on his record involved a teenage girl, and the encounter did not involve force.   The request for supervised release conditions specifically geared toward preventing sex offenses assumes that, because Mr. Hathaway committed a sexual offense eleven years ago, he is at a particularly high risk to reoffend.   This is not true.   Although the public perception is that sex offenders pose a serious public safety risk, in fact, research shows that the recidivism rate for sex offenders is less than that of nonsexual criminals.   See Terence W. Campbell, Assessing Sex Offenders, 3 (2nd ed. 2007).

Furthermore, the Court should consider Mr. Hathaway's age (32) since research shows that recidivism declines with age, and that given the length of time that has passed without a second sex offense, there is no reason for the Court to suspect that he is at any risk to reoffend.[4]   *See* Assessing Sex Offenders, *supra* at 201 - 206 (citing studies that demonstrate that recidivism declines with age) and 251-252 (citing study that demonstrates that sex offenders do not necessarily have "enduring preferences for such behavior").

---

4 Even though Mr. Hathaway has not been charged with, or convicted of, any sex offense since the one conviction eleven years ago, he has been convicted of other types of crimes, mostly theft and drug offenses.   However, the proposed conditions 9-11, including sex offender treatment, bear no relationship to those types of offenses. "Therefore, it is unclear how sex offender treatment would rehabilitate him as to sexual crimes if he has not committed such crimes in the past [11] years, and it is even less clear how the treatment program could 'rehabilitate' him from committing the non-sexual offense-based …crimes he has committed in the past [11] years." *United States v. Morales-Cruz*, 712 F.3d 71, 78 (1st Cir. 2013) (Torruella, J., dissenting).

>Mr. Hathaway addresses each of the proposed conditions to which he objects in turn:
>
>Proposed Condition 9: Mr. Hathaway objects to the condition that he participate in "sexual specific evaluation or sex offender specific treatment. Mr. Hathaway has only a single sex conviction on his record. He has had no other criminal charges, let alone convictions, involving minors or sexual deviance. The "behavior to be deterred," if such behavior ever existed in Mr. Hathaway, has "ceased independently," and thus there is no need for sex offender treatment. *United States v. Scott*, 270 F.3d 632, 635 (8th Cir. 2001) (citing *United States v. Kent*, 209 F.3d 1073, 1077 (8th Cir. 2000)). The type of testing, including "physiological testing" and polygraph examinations, and evaluation recommended by Probation includes not only regular attendance and participation in a therapy program, but also invasive testing procedures. It is a condition that would be a significant deprivation of liberty.
>
>Proposed Condition 10: Mr. Hathaway has lived without any restriction with regard to associating with children until he was placed on lifetime community parole in October 2012. As explained earlier, lifetime community parole was imposed not because Mr. Hathaway had committed another sex offense, but because he failed to register. To impose such a restriction on him now, without any inappropriate contact with minors since 2003, is just not rational. He has no history of predatory behavior. It is a restriction that would impede his movements and associations considerably while on supervised release and would be a far greater deprivation of liberty than is reasonably necessary in the circumstances of this case.
>
>Proposed Condition 11: Mr. Hathaway does not need to be restricted from working in a job, or volunteering in a position, where he could have contact with children for the same reasons as stated in his objection to Proposed Condition 10. Mr. Hathaway will have enough difficulty finding employment while on supervised release given his criminal history. Creating additional restrictions that are simply not necessary would only make the prospect of employment even more difficult.

For these reasons, Mr. Hathaway objects to the imposition of proposed special conditions 9-11. These conditions are not reasonably related to, nor do they involve no greater deprivation of liberty than is reasonably necessary to: 1) deter to criminal conduct, where Mr. Hathaway already served two year prison term for his conviction which obviously deterred him from committing any kind of similar offense; 2) are not necessary to protect the public from further crimes of the defendant where his only recent convictions are related to his substance abuse and poverty; and 3) will not provide Mr. Hathaway with any needed educational or vocational training, medical care, or other correctional treatment, but rather would make his transition back to the community more difficult.

## CONCLUSION

Mr. Hathaway is in need of a lot of help, but that help should be geared towards his substance abuse, depression, and poverty. Incarceration has not proved productive in the past, and lengthy incarceration is not appropriate given the nature of the crime before the Court. Eighteen months in prison, plus the six months he has already served in Massachusetts, is a long enough sentence for the simple crime he committed. What will make the most difference for Mr. Hathaway is the support he receives when he is released, which is why supervised release is a crucial component of his sentence. For these reasons, the defendant asks the court to impose a sentence of eighteen months followed by five years' supervised release.

>RYAN HATHAWAY
>By His Attorney
>
>*/s/ Jane F. Peachy*
>**Jane Peachy, BBO#661394**
>**Federal Defender Office**
>**51 Sleeper Street, 5th Floor**
>**Boston, MA 02210**
>**Tel: 617-223-8061**

## CERTIFICATE OF SERVICE

I, Jane F. Peachy, Esquire, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on August 12, 2014.

>*/s/ Jane F. Peachy*
>**Jane F. Peachy**